IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MARY SOWELL et al.,

     Plaintiffs,

v.                                  CASE NO. 5:14-cv-93-RS-GRJ

TARGET CORPORATION,

     Defendant.

_____/

## O R D E R

     Pending before the Court is Defendants' Motion for Protective Order,  Doc. 12, to which Plaintiffs have filed a response in opposition. Doc. 15.   Defendant seeks a protective order regarding production of a store surveillance video depicting Plaintiff's slip and fall accident. Alternatively, Defendant requests the Court to enter an order allowing Defendant to withhold production of the video until after the Defendant has taken the deposition of Plaintiff. For the reasons discussed below, Defendant's Motion for Protective Order is due to be denied.

### *DISCUSSION*

     The issue before the Court is whether the digital recording of a surveillance video taken by Defendant's in-store cameras depicting the slip and fall in this case is protected from disclosure under the work product privilege.

     Defendant contends that the footage of the video surveillance was prepared in anticipation of litigation because the "defendant went out of its way to create and preserve a digital recording from the video in order to assist in the preparation of its

defense to potential litigation." Doc. 12, p. 3.  According to Defendant, the video taken by Defendant's store cameras would have been erased in the ordinary course of business after a period of time but instead was preserved and maintained under the direction and policies of Defendant's claims department. Notably absent, however, from the record is any declaration or other evidence submitted by Defendant regarding the policy of Defendant, if any, for recording over surveillance tapes or any evidence identifying the policy of Target for retaining the video  when there is an accident in the store.

The claim in this case is straightforward. Plaintiff alleges she was injured as a result of a slip and fall in a Target Store. As part of Plaintiff's routine discovery requests, Plaintiff requested Defendant to produce "[a] copy of any video showing Plaintiff's ... fall or area where Plaintiff ... fell."  The digital recording of the surveillance video Defendant seeks to protect as work product is directly responsive to Plaintiff's discovery request.

The work product doctrine has its origins in *Hickman v Taylor*, 329 U.S. 495 (1947) and was eventually incorporated into Rule 26(b)(3) of the Federal Rules of Civil Procedure. Rule 26(b)(3) provides in pertinent part: "[O]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney ... or agent)"  Thus, as contemplated, the work-product doctrine protects from disclosure materials prepared by an attorney or by an agent of a party[1] in anticipation of

---

[1] The material need not be prepared by an attorney since Rule 26(b)(3) expressly extends protection to materials prepared by or for a representative of a party, including his agent. *Advisory Committee Note* to Rule 26(b)(3).

litigation. Unlike the attorney-client privilege, the scope of protection provided by the work product doctrine is a procedural question and thus governed by federal, as opposed to state law in a diversity action. *Camacho v Nationwide Mut. Ins. Co.*, 287 F.R.D. 688, 694 (N.D. Ga. 2012). The burden is on Defendant, the party withholding discovery, to show that the document or thing should be afforded work-product protection. *Essex Builders Group, Inc. v Amerisure Ins. Co.,* no. 6:04-cv-1838-Orl-22JGG, 2006 WL 1733857 (M.D. Fla. June 20, 2006)(*citations omitted)*.

There is no consensus among the courts as to whether surveillance videos are prepared in anticipation of litigation and thus subject to protection as work product.  For example, in *Bolitho v Home Depot*, no. 10-60053-CIV-Cohn/Seltzer, 2010 WL 2639639 (S.D. Fla. June 3, 2010) the Court there concluded that a surveillance video of a slip and fall in a store was protected work product where the plaintiff returned to the store two hours later to report the incident, which caused Plaintiff to copy and preserve the surveillance video. In contrast, in *Schulte v NCL (Bahamas) Ltd.,* no. 10-23265-CIV, 2011 WL 256542 (S.D. Fla. Jan. 25, 2011) the Court concluded that a surveillance video of a slip and fall incident aboard a cruise ship was not protected work product even though it was copied and preserved at the request of counsel for the cruise line. The *Schulte* court reasoned that the surveillance video was not work product when it was created because it was taken and recorded in the ordinary course of business and not in anticipation of litigation. The defendant there argued that the surveillance video became subject to work product protection when it was preserved, and not copied over, based upon instructions by NCL's counsel. The *Schulte* court rejected this argument

concluding that preserving the tape was carried out pursuant to the defendant's duty to preserve evidence. The Court wrote:

> It would be anomalous, to say the least, if by ordering a client
> to preserve evidence created in the ordinary course of business,
> in anticipation of litigation, counsel was able to shield that evidence
> from production based upon work product protection.

*Id.,* at *3.

The approach taken in *Schulte* makes the most sense.  A document or thing is subject to work product protection when the proponent of the privilege demonstrates that at the time the document or thing was prepared the entity anticipated litigation. *CSX Transp., Inc. v Admiral Ins. Co.,* 1995 WL 855421, at *2 (M.D. Fla. July 20, 1995). On the other hand, materials prepared in the ordinary course of business are not protected. *Id.*  The key determination, therefore, in assessing the applicability of the work product privilege, is when the document or thing was created and why the document or thing was created. *See, e.g. In re Sealed Case,* 146 F. 3d 881, 884 (D.C. Cir. 1998)("The 'testing question for the work-product privilege ... is 'whether, in light of the nature of document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'").

The surveillance video in this case was taken and recorded in the routine and ordinary course of business of Target. There is no evidence (nor does Defendant argue) that the store surveillance video system was implemented or created because of the prospect of litigation. Indeed, common sense dictates that store surveillance videos

are utilized by stores to prevent and detect theft by customers or by store employees.
Consequently, Defendant has not demonstrated that the recording of the slip and fall in
this case during the store's routine surveillance was created in anticipation of litigation.

Moreover, as the *Schulte* court concluded the mere act of preserving the tape –
as opposed to creating the original recording – is not sufficient to transform a document
created in the ordinary course of business into work product protected from disclosure.[2]
Indeed, if that was the law literally ever piece of electronically stored information ("ESI")
preserved by a defendant as part of a defendant's duty of preservation would be off
limits in discovery because it would be considered work product.

Lastly, to the extent that the act of preserving the tape and not erasing it could
be viewed as being created in anticipation of litigation, the Defendant has failed to meet
its burden of demonstrating how the tape was created or why it was created – essential
information for determining whether a document or thing was created in anticipation of
litigation. This case is therefore different from those cases where courts have
concluded that incident reports created after a slip and fall were protected as work
product. *See, e.g. Fojtasek v NCL (Bahamas) Ltd.,* 262 F.R.D. 650 (S.D. Fla.  2009);
*Alexander v Carnival Corporation*, 238 F.R.D. 318 (S.D. Fla. 2006).  In those cases the
proponent of the work product privilege submitted affidavits from its claims manager (or

---

[2] *Schulte* relied upon *Target Corp. Vogel,* 41 So. 3d 962, 963 (Fla. Dist. Ct. App. 2010, a Florida
state law case, as highly persuasive. The court in *Vogel* held that a surveillance video recorded by the
store as part of its ordinary course of business is not work product as opposed to surveillance video taken
after the incident. While the Court recognizes that the determination of whether a document or thing is
work product is controlled by federal and not state law, Florida law regarding the work product privilege is
largely consistent with federal law. *Vogel* is also particularly instructive here because the defendant there
and the defendant here are the same.

other suitable person) that it was the policy of the cruise line based upon the advice of its legal counsel to investigate customer injuries and create an accident report.  In this case because the Defendant has not submitted any declaration or other evidence concerning when the tape was recorded or even whether it was created at the express request of counsel or risk management the Court is left to guess as to whether the tape was preserved after or before Defendant received notice of a potential claim by the Plaintiff.  Indeed, to the extent that the tape simply was preserved as part of a general policy of preserving the surveillance tapes in every instance where a customer slips and falls the practice would be more akin to a routine business practice rather than an action taken by the defendant in anticipation of litigation. The Court, however, need not speculate as to when the tape was preserved or the reason the tape was preserved because the Defendant has failed to submit any evidence on the issue. Accordingly, the Defendant has failed to meet its burden of demonstrating that the surveillance video should be protected from disclosure as work product.

Defendant alternatively requests the Court to delay production of the store surveillance tape until after the Plaintiff's deposition has been completed in the event the Court determines that the video is not protected by the work product privilege. According to Defendant, it has the right to hear Plaintiff's unrefreshed recollection of events so as to prevent Plaintiff from altering her testimony to mirror what the tape shows.

Courts addressing this issue – like the issue of whether the surveillance videos are work product – have taken conflicting views on whether production of the video

should be delayed. District courts ordering that delay in production is justified have relied primarily upon the rationale that requiring a plaintiff to provide independent recollection of the incident does not prejudice the plaintiff and delaying disclosure of the video precludes any possibility of a plaintiff tailoring her testimony to the video. *See, e.g. Bolitho v Home Depot, USA, Inc.,* 2010 U.S. Dist. LEXIS 76487, *4 (S.D. Fla. June 3, 2010)(denying plaintiff's motion to compel store surveillance video prior to her deposition); *Parks v NCL (Bahamas) Ltd.,* 285 F.R.D. 674 (S.D. Fal. 2012)("The Court agrees with Defendant that Plaintiff should be required to give her deposition testimony bases on her own independent recollection fo the incident, without being refreshed in any way by the videotape.").  In contrast, courts that have refused to delay disclosure of surveillance videos have focused upon whether the video was to be used solely for impeachment purposes or was to be used as substantive evidence. *Muzaffarr v Ross Dress For Less, Inc.,* 941 F. Supp. 2d 1373 (S.D. Fla. 2013); *DeHart v Wal-Mart Stores, East, L.P.*, no. 4:05cv00061, 2006 WL 83405 (W.D. Va. Jan. 6, 2006)("[w]here the substantive value of the evidence predominates, courts have held that production should not be delayed until after deposition.") Courts also have considered whether the defendant has pointed to any evidence that disclosure of the video would lead a plaintiff to improperly tailor her testimony. *Schulte,* at, *4.

While the Court concludes there may be circumstances justifying delay in disclosure of a surveillance tape, the Court finds that Defendant here has not pointed to any justification for delaying disclosure of the tape other than unsupported speculation that the Plaintiff's testimony may be altered in some way to reflect the events on the

surveillance tape. The surveillance tape in this case – which the Defendant has submitted and the Court has reviewed – depicts what appears to be a typical slip and fall accident. The tape was not produced by an investigator depicting Plaintiff engaging in activities inconsistent with her claimed injuries. If that was the case there would be a compelling reason to delay disclosure of the tape. Because the tape here depicts the incident giving rise to Plaintiff's claim its primary evidentiary value is proof of the underlying facts surrounding the incident and not primarily for impeachment purposes.

There is also another reason not to delay disclosure of the surveillance tape.  If the Court was to delay disclosure of the videotape until after the Plaintiff's deposition, the store employees, who witnessed the incident, presumably would have the benefit of viewing the tape before their depositions are taken, thus, creating a disadvantage.

In sum, the surveillance video is substantive evidence of the slip and fall incident that does not appear to have any great value as impeachment evidence. The video is not protected by the work product privilege and therefore delaying production of the video would deprive Plaintiff of the opportunity to obtain discovery to which she is entitled. The Defendant has not offered any specific information demonstrating that disclosure of the video would cause Plaintiff improperly to tailor her testimony. And to the extent that viewing the surveillance video could cause a witness to tailor his or her testimony delaying disclosure of the surveillance video potentially could provide the Defendant with an advantage because its witnesses would have the benefit of viewing the video before their depositions are conducted and Plaintiff would not.

Accordingly, for these reasons, the Court concludes that the circumstances in

this case do not warrant delaying the disclosure of the surveillance video. The

Defendant is required to make arrangements to produce the surveillance video for

inspection and copying before Plaintiff's deposition.

Accordingly, it is **ORDERED:**

(1)   Defendant's Motion for Protective Order,  Doc. 12, is **DENIED**. Defendant must produce the surveillance video for inspection and copying prior to Plaintiff's deposition.

(2)   Defendant's Motion To Seal Protected Materials, Doc. 13, is **GRANTED in part and DENIED in part**. The request is granted to the limited extent that the Court was required to review the videotape in camera before ruling on Defendant's Motion for Protective Order. Because the Court has denied Defendant's Motion for Protective Order there is no reason to seal the videotape and therefore the Clerk is directed to unseal the videotape filed at Doc. 19.

**DONE AND ORDERED** this 28th day of May 2014.


*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge